IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,    )
    )
    v.    )    Criminal No. 05-321
    )
TREMAYNE BRISTON,    )
    )
    Defendant.    )
    )

**OPINION**

I.    Introduction

Pending before the court is a motion for compassionate release filed pro se by defendant Tremayne Briston[1] ("Briston"), with attached medical records and a letter to the court (ECF No. 178). The government filed a response opposing relief on procedural and substantive grounds (ECF No. 185) and providing medical records under seal (ECF No. 186). The court granted Briston's motion to file a reply to the government, which he filed on September 29, 2022 (ECF No. 189). Briston attached his sentence computation (ECF No. 189-1), but did not provide any additional medical records. The motion is ripe for disposition.

II.    Procedural Background

On November 16, 2006, Briston pleaded guilty to count 1 of the indictment at Crim. No. 05-321, which charged him with conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine. In the plea agreement, Briston waived his right to file a § 2255 motion or "any other collateral proceeding attacking his conviction or sentence." (ECF No. 108). The presentence investigation report ("PSR") determined an offense level of 23 and a

---

[1] The court notes that the motion was filed by "Tremayne Biston." The court believes this was a typographical error.

criminal history category of IV, for a guideline range of 70-87 months.

On July 3, 2007, the court sentenced Briston to a term of imprisonment of 70 months, to commence on the **earlier** of: (a) his release from the term of imprisonment he was serving for an aggravated manslaughter conviction in New Jersey; or (b) January 1, 2020. (ECF No. 140). The statutory mandatory minimum term of imprisonment is 5 years. In imposing sentence, the court considered the § 3553(a) factors, recognized that Briston committed a serious drug offense and had a history of violence, drug trafficking and life-long interactions with the criminal justice system. Briston began his federal sentence on January 1, 2020. Briston is mistaken in his assertion that his federal prison term commenced at the time of his sentence. His federal prison term was only to run concurrent from the earlier of the dates noted. Thus, since he was still serving his state sentence on January 1, 2020, that was the earlier date and his federal prison term started to run concurrent with the state sentence on that date. His projected release date, which reflects credit for good time, is August 20, 2024. https://www.bop.gov/mobile/find_inmate/index.jsp#inmate_results, last visited October 3, 2022.

Briston is 49 years old and is currently incarcerated at FCI Allenwood, a medium security prison in White Deer, PA. https://www.bop.gov/locations/institutions/alm/, last visited October 3, 2022. There are 1,293 inmates at the facility. The BOP website reflected that on October 3, 2022, there were 0 cases of COVID-19 among inmates and 0 active cases involving a staff member. https://www.bop.gov/coronavirus/index.jsp, last visited October 3, 2022.[2]

In February and March, 2021, Briston was vaccinated against the COVID-19 virus, receiving two doses of the Moderna Vaccine (ECF No. 186 at 205). Briston received a booster shot of the Moderna Vaccine on December 16, 2021. (ECF No. 186 at 97). Vaccinations of staff

---

[2] There were 10 cases of Covid-19 among inmates at the nearby low security Allenwood facility and 3 cases of Covid-19 at the high security USP Allenwood. https://www.bop.gov/coronavirus/index.jsp, last visited October 3, 2022.

and other inmates at FCI Allenwood are ongoing.  At FCI Allenwood, 2,308 inmates have been fully vaccinated.  https://www.bop.gov/coronavirus/, last visited October 3, 2022.  Vaccines are offered to newly arriving inmates and to those who initially declined to be vaccinated.  Inmates are offered booster shots in accordance with CDC guidance.  *Id.*  Briston did not present any evidence about the impact his (and others') vaccination on his risk of contracting the COVID-19 virus or his risk of experiencing severe symptoms if he does get infected.

On September 9, 2021, Briston submitted a request to the warden, seeking compassionate release to home confinement because he is morbidly obese, has high blood pressure, a hernia on his lung, diabetes, is confined to a wheelchair and has trouble performing daily duties.  (ECF No. 185-1).  Briston's request referred to the threat from "this virus and the new variant" (which the court construes as a reference to COVID-19).  *Id.*  On September 28, 2021, the warden denied Briston's request.  The warden explained that Briston was not diagnosed with a terminal medical condition, was not disabled and had the ability to function in the correctional environment.  (ECF No. 185-2).  The warden also noted that due to his medium security classification and conviction for a crime of violence, Briston was not a suitable candidate for home confinement.  *Id.*

In the pending motion, Briston asserts additional medical reasons why he should be given compassionate release.  He states that he has terminal illnesses, including arthritis in the spine, diabetes, high blood pressure, high cholesterol, asthma, hernia in the stomach line, sleep apnea, congestive heart failure and the aging process.  (ECF No. 178 at 6).

The medical records provided by Briston reflect that on March 7, 2022, the doctor noted that Briston "appears well, without distress" and noted no pulmonary or cardiovascular issues.  (ECF No. 178-2 at 14).  As of April 6, 2022, Briston's health problems were: anxiety disorder; major depressive disorder; noncompliance with medical treatment; obesity; type 2 diabetes

mellitus; essential (primary) hypertension; hyperlipidemia, unspecified; hematuria, unspecified; unspecified skin changes; abdominal pain; cannabis use disorder, severe; myopia; asthma; gastro-esophogeal reflex disease without esophagitis; and urinary tract infection. (ECF No. 178-2 at 30). Briston is prescribed numerous medications for his conditions. (*see* list at ECF No. 186 at 160-161).

Briston reported that sometime in 2020, when he was in state custody, he experienced uncontrolled reflux and shortness of breath after having COVID-19. (ECF No. 186 at 160). The medical records provided by the government reflect Brison's care after August 2021, when he was transferred to FCI Allenwood. The intake exam noted no acute cardiopulmonary disease and his lungs were clear. (ECF No. 186 at 194). He was placed in Care Level 1. (ECF No. 186 at 193). His wheelchair use ended on September 30, 2021. *Id*. On March 22, 2022, Briston had no work restrictions, although he was permitted to wear personal soft shoes. (ECF No. 186 at 98). A renal ultrasound in March 2022 reported unremarkable kidneys. (ECF No. 186 at 173). A medical note on May 4, 2022 observed that he "appears well and in no acute distress." (ECF No. 186 at 162).

III.     Exhaustion of administrative remedies

The government contends that Briston did not exhaust his administrative remedies because he did not present the same arguments to the warden that he now makes to the court. In United States v. Raia, 954 F.3d 594 (3d Cir. 2020), the United States Court of Appeals for the Third Circuit held that courts cannot consider requests for compassionate release under the First Step Act until a prisoner has exhausted his administrative remedies, including allowing 30 days for the Bureau of Prisons ("BOP") to respond to a request for release. The court noted the BOP's

statutory role and its shared desire for a safe and healthy prison environment. The court concluded that "strict compliance with § 3582(c)(1)(A)'s exhaustion requirement" must be demonstrated. *Id.* at 597.

Part of "strict compliance" with the exhaustion requirement is that the BOP be given the opportunity to consider the same request made to the court. *See* Gadra-Lord v. Doe, 736 F. App'x 30, 32 (3d Cir. 2018) (prisoner failed to exhaust administrative remedies even though he filed numerous prison grievances because none addressed the subject of the federal court complaint); United States v. Valenta, No. CR 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020), reconsideration denied, No. CR 15-161, 2020 WL 1984319 (W.D. Pa. Apr. 27, 2020) ("One of the purposes for requiring prisoners to exhaust their administrative remedies before bringing a claim in federal court is to give the BOP an opportunity to address the issue.") (citing Woodford v. Ngo, 548 U.S. 81, 89 (2006)).

In Valenta, this court held that an inmate failed to exhaust his administrative remedies where the inmate sought release because he was not receiving appropriate medical treatment that predated the pandemic and made no specific reference to COVID-19.  In United States v. Amaro, No. CR 19-263, 2022 WL 2789868, at *1–2 (W.D. Pa. July 15, 2022), the court held that an inmate failed to exhaust where his administrative request was based on his wife's pregnancy and the financial stress caused by his family's tire business and did not mention his own susceptibility to COVID-19, which was the basis for his motion filed with the district court.

This case is distinguishable from Valenta and Amaro.  Briston asked the warden to consider compassionate release based on the threat posed by the COVID-19 virus due to his medical condition.  The warden considered Briston's medical condition and COVID-19 in denying the request.  The fact that Briston listed additional medical conditions in his motion to

the court does not constitute a basis for relief that was not presented to the BOP. *See* United States v. Alford, No. CR 08-374, 2021 WL 1561508, at *3 (W.D. Pa. Apr. 21, 2021), reconsideration denied, No. CR 08-374, 2021 WL 1986420 (W.D. Pa. May 18, 2021), aff'd, No. CV 21-2036, 2021 WL 5859466 (3d Cir. Nov. 15, 2021), and aff'd, No. CV 21-2036, 2021 WL 5859466 (3d Cir. Nov. 15, 2021) ("an inmate seeking compassionate release due to his debilitated medical condition, in concert with the COVID-19 pandemic, fairly puts the BOP on notice of the basis for his request."). The court concludes that Briston exhausted his administrative remedies.

IV.    Discussion

A.  **Applicable Law**

Briston seeks compassionate release from imprisonment. A district court has only limited authority to "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); United States v. Savani, 733 F.3d 56, 60 (3d Cir. 2013). The Third Circuit Court of Appeals has recognized that Congress enacted exceptions to this "general rule of finality" in 18 U.S.C. § 3582(c)(1). United States v. Easter, 975 F.3d 318, 323 (3d Cir. 2020) (explaining that "[s]entence modifications under § 3582(c) constitute 'exception[s] to the general rule of finality' of sentences") (quoting Dillon v. United States, 560 U.S. 817, 824 (2010)).

Section 3582(c)(1)(A) provides:

**(c) Modification of an imposed term of imprisonment.**--The court may not modify a term of imprisonment once it has been imposed except that—

(1) in any case--

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

6

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission….

18 U.S.C. § 3582(c)(1)(A). The statute sets forth a three-step analysis for district courts to utilize to resolve a motion for compassionate release. The Third Circuit Court of Appeals has instructed that pursuant to § 3582(c)(1)(A), "a district court 'may reduce [a federal inmate's] term of imprisonment' and 'impose a term of probation or supervised release … if it finds that … extraordinary and compelling reasons warrant such a reduction.'" United States v. Pawlowski, 967 F.3d 327, 329 (3d Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)). "[B]efore granting compassionate release," however, "a district court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)). The court must also consider whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission, 18 U.S.C. § 3582(c)(1)(A). United States v. Andrews, 12 F.4th 255, 258 (3d Cir. 2021) (prisoner's compassionate release motion "may be granted if the court finds that the sentence reduction is (1) warranted by 'extraordinary and

compelling reasons'; (2) 'consistent with applicable policy statements issued by the Sentencing Commission'; and (3) supported by the traditional sentencing factors under 18 U.S.C. § 3553(a), to the extent they are applicable.").

Based upon the foregoing, to grant Briston compassionate release under § 3582(c)(1)(A), the court must analyze whether: (1) extraordinary and compelling reasons exist for his release; (2) compassionate release is warranted in consideration of the § 3553(a) factors;[3] and (3) compassionate release is consistent with applicable policy statements issued by the Sentencing Commission.

Briston bears the burden of proof by a preponderance of the evidence to show that he is entitled to compassionate release. United States v. Smith, No. CR 9-187, 2020 WL 4047485, at *2 (W.D. Pa. July 20, 2020) (citing United States v. Adeyemi, No. CR 06-124, 2020 WL 3642478, at *16 (E.D. Pa. July 6, 2020)). Courts have held that to satisfy this burden, a movant must produce evidence to the court. See e.g., United States v. Matthews, Crim. Action No. 09-

---

[3]       The factors set forth in 18 U.S.C. § 3553(a) are:

- the nature and circumstances of the offense and the history and characteristics of the defendant, § 3553(a)(1);

- the need for the sentence imposed to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, § 3553(a)(2)(B)-(D);

- the sentencing range established by the Sentencing Commission, § 3553(a)(4);

- any pertinent policy statement issued by the Sentencing Commission, § 3553(a)(5);

- the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, § 3553(a)(6); and

- the need to provide restitution to any victims of the offense, § 3553(a)(7).

612-1, 2020 WL 5217132, at *6 (E.D. Pa. Sept. 1, 2020); United States v. Brunetti, Crim. Action

No. 2020 WL 4516541, at *6 (E.D. Pa. July 31, 2020); United States v. Richardson, Crim. No.

18-507, 2020 WL 2200853, at *2 (E.D.N.C. May 6, 2020).


### B.  Extraordinary and Compelling Reasons

### 1.  General Background

Prior to the enactment of the First Step Act on December 21, 2018, only the Director of

the BOP could file a motion for a sentence reduction under §3582(c)(1)(A)(i).  Ray v. Finley,

No. 3:19-CV-0988, 2019 WL 5569616, at *3 (M.D. Pa. Oct. 29, 2019). The First Step Act

amended § 3582(c)(1)(A), which now provides that "a motion for reduction in sentence may be

filed by either the Director of the BOP or a federal inmate" after the federal inmate exhausts

administrative remedies. Id.

"Congress did not define 'extraordinary and compelling reasons' except to provide

'rehabilitation…alone' does not suffice." Adeyemi, 2020 WL 3642478, at *7 (quoting 28 U.S.C.

§ 994(t)). The Third Circuit Court of Appeals has explained that "compelling and extraordinary"

reasons for the reduction of a sentence are "defined by the commentary to policy statement

U.S.S.G. § 1B1.13." United States v. Handerhan, No. 19-1904, 789 F. App'x 924, 925 (3d Cir.

2019) (citing United States v. Barberena, 694 F.3d 514, 521 n.10 (3d Cir. 2012)). "That

commentary currently lists four categories of such reasons: (1) the defendant's medical

condition; (2) the defendant's age; (3) the defendant's family circumstances; and (4) 'other

reasons' as determined by the Director of the Bureau of Prisons." Id. (quoting U.S.S.G. § 1B1.13

cmt. n.1.). The court in Adeyemi explained the first three categories as follows:

> The first category includes incarcerated persons suffering from terminal
> illnesses, such as metastatic solid-tumor cancer, amyotrophic lateral sclerosis,

end-stage organ disease, and advanced dementia, or those suffering from medical conditions, impairments, or deteriorations due to age that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."…The second category includes incarcerated persons who are at least sixty-five years old, experience a serious deterioration in physical or mental health because of the aging process; and have served at least ten years or seventy-five percent of their term of imprisonment, whichever is less….The third extraordinary and compelling reason may arise where the primary caregiver of the incarcerated person's minor child or children died or became incapacitated or where the incarcerated person's spouse became incapacitated and he is the only available caregiver for the spouse.

Adeyemi, 2020 WL 3642478, at *7 (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(C)).

In Andrews, the court of appeals held that district courts are not strictly bound by the policy set forth in the sentencing guidelines. Andrews, 12 F.4th at 259. On the other hand, the district court "did not err when it consulted the text, dictionary definitions, and the policy statement to form a working definition of 'extraordinary and compelling reasons.'" Id.

The court in Somerville provided a helpful working definition:

The word "extraordinary" is commonly understood to mean "going beyond what is usual, regular, or customary," or "exceptional to a very marked extent." *Extraordinary*, Merriam-Webster Dictionary (2020); see also *Extraordinary*, Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary, regular, or common.").

The word "compelling" means "forceful," "demanding attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); see also *Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great that irreparable harm or injustice would result if it is not met.").

Thus, at a minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both unusual (i.e., unique to the inmate, and beyond the ordinary hardship of prison) and significant (i.e., serious enough to make release appropriate).

Somerville, 2020 WL 2781585, at *7.

### 2. Consideration of COVID-19

In Somerville, the court concluded that "a prisoner seeking release due to COVID-19

must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a ***uniquely high risk*** of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Somerville, 2020 WL 2781585 at *4. (emphasis added). That test must be modified in light of the vaccinations that are occurring in BOP facilities. Even if an inmate has serious underlying medical conditions and faces a non-speculative risk of exposure to the COVID-19 virus, the vaccine may prevent that inmate from contracting the virus or significantly reduce that inmate's risk of infection or reinfection. United States v. Rhodes, No. CR 15-23, 2021 WL 4460031, at *4 (W.D. Pa. Sept. 29, 2021)

The court, therefore, needs to determine whether Briston set forth extraordinary and compelling reasons for his compassionate release based upon his medical conditions and the situation at FCI Allenwood – taking into account his vaccination. Briston has the burden to produce evidence to show that: (1) he faces a uniquely high risk of grave illness or death if infected or reinfected by the COVID-19 virus, considering his underlying medical conditions and age and the protective effects of the vaccine; and (2) he faces a non-speculative risk of contracting or recontracting the COVID-19 virus, considering both the risk of exposure at FCI Allenwood and the preventative effects of the vaccine.

    a. Whether Briston faces a uniquely high risk of grave illness or death from being reinfected by the COVID-19 virus

In his motion, Briston contends that he has a uniquely high risk of grave illness or death from the COVID-19 virus due to his preexisting medical conditions. Briston's obesity is clearly a COVID-19 risk factor. The medical records provided by Briston reflect that on March 7, 2022, he weighed 355 pounds and his BMI was 50. (ECF No. 178-2 at 13). Briston denied any

mobility problems and did not use an ambulatory aid.  *Id.*  The Centers for Disease Control

("CDC") reports that being overweight or obese is a risk factor for experiencing severe

symptoms from COVID-19:  "Overweight (defined as a body mass index (BMI) > 25 kg/m2 but

< 30 kg/m2), obesity (BMI ≥30 kg/m2 but < 40 kg/m2), or severe obesity (BMI of ≥40 kg/m2),

can make you more likely to get very sick from COVID-19.  The risk of severe illness from

COVID-19 increases sharply with higher BMI."  https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html, last visited October 3, 2022.

The government recognizes that Briston's obesity would ordinarily place him at

increased risk of serious consequences from COVID-19 (ECF No. 185 at 5).  The government

contends, however, that because Briston is fully vaccinated his risk of severe illness from the

COVID-19 virus is substantially mitigated.

Neither party presented evidence about the COVID-19 risk to obese individuals who have

been vaccinated.[4]  The court concludes that Briston did not meet his burden to demonstrate that

his obesity warrants compassionate release in light of his vaccination.

The government asserts that the BOP is providing appropriate care for all Briston's

medical conditions and that they do not provide a basis for compassionate release.  The

government points out, accurately, that Briston's medical records show his wheelchair use ended

in September 2021 and he has no current mobility problems (ECF No. 186 at 193).[5]  There is no

medical evidence to support his claims of sleep apnea, arthritis in the spine or congestive heart

failure.  Asthma, high blood pressure, high cholesterol and diabetes may be COVID-19 risk

---

[4] The court notes there is a recent medical study indicating that "obese patients who have been vaccinated against COVID-19 have a similar degree of protection against severe disease and death as those of a healthy weight according to a large, population-based cohort study by researchers from the UK and Spain." https://hospitalhealthcare.com/COVID-19/vaccination-protects-overweight-and-obese-against-severe-COVID-19/, last visited October 3, 2022.  See Garrett v. Murphy, 17 F.4th 419, 433 (3d Cir. 2021) (taking judicial notice that effective COVID-19 vaccines are widely available). The court makes no findings with respect to the study.
[5] Briston asserts he is still confined to a wheelchair (ECF No. 189 at 3), but he provided no evidence to support that assertion.

factors.  Briston's asthma is not identified as severe and is treated with an inhaler.  The most

recent medical exams did not identify any pulmonary or cardiovascular problems (ECF No. 186

at 194). His kidneys are functioning properly (ECF No. 186 at 173).  The government represents

that heart-healthy, low-salt diets are available.  In sum, the government argues that Briston did

not meet his burden to demonstrate extraordinary and compelling reasons for compassionate

release.

The medical records reflect that Briston is, in fact, receiving proper medical treatment for

his preexisting conditions.  Those conditions do not prevent Briston from providing self-care in

the correctional environment and do not warrant compassionate release.  There is no evidence

that the prison environment exacerbates Briston's conditions and it appears that he would

experience the same symptoms if he were released.  He does not qualify for release due to his

age – he is 49.  Under the present circumstances, Briston's medical conditions do not warrant

compassionate release.

The court concludes that, based on this record, because Briston is now fully vaccinated he

cannot establish that he faces an extraordinary or compelling risk from the COVID-19 virus.

"Although vaccines are not one hundred percent effective, the CDC states that '[c]urrently

authorized vaccines in the United States are highly effective at protecting vaccinated people

against symptomatic and severe COVID-19.'  Vaccines are particularly effective at preventing

'severe illness and death.'"  United States v. Singh, No. 4:15-CR-00028-11, 2021 WL 928740, at

*2 (M.D. Pa. Mar. 11, 2021) (concluding that recent vaccination mitigated risk to such an extent

that COVID-19, in combination with defendant's underlying conditions, no longer presented an

extraordinary and compelling reason to grant compassionate release).  In Singh, the court

recognized that the inmate in that case had underlying medical conditions which ordinarily

would have established grounds for compassionate release. The court concluded, however, that vaccination mitigated those risks. Id. at *3. The court's conclusion was "in accord with the vast majority of courts that have considered this issue." Id. (citations omitted).

In other words, the decisions teach that because Briston is fully vaccinated, he faces a reduced risk that: (1) he will contract the COVID-19 virus; and (2) if he is infected or reinfected, he will experience severe symptoms. In Singh, the court emphasized that an inmate bears the burden to demonstrate that compassionate release is warranted and denied the motion without prejudice to the inmate's opportunity to file a new motion supported by evidence that the vaccine would not mitigate a substantial risk of serious illness from a COVID-19 infection. Id. at *4.

In this case, Briston similarly failed to meet his burden to demonstrate that he continues to face a substantial risk from the COVID-19 virus despite his vaccination. Briston did not provide any evidence about the impact of his vaccination. While there are certainly still unknowns about the vaccine administered to Briston, it appears that Briston's risks of (1) being reinfected by COVID-19, and (2) suffering severe illness if he is reinfected, are speculative because of his vaccination. On this record, the court concludes that Briston failed to meet his burden to show extraordinary and compelling reasons for compassionate release due to the COVID-19 virus.

> b. Whether Briston faces an actual, non-speculative risk of contracting the COVID-19 virus at FCI Allenwood

The court takes judicial notice that there are no current cases of COVID-19 infection among the inmates or staff at FCI Allenwood. Although the court recognizes the BOP's significant efforts to minimize and control the spread of the pandemic, it is well-established that it is difficult to engage in social distancing and other mitigation efforts in a congregate setting

such as a prison.  The vaccine has been offered to all inmates and will be offered to incoming

inmates.  Vaccination of all or substantially all inmates and staff will limit the spread of the virus

and reduce the risk of exposure at FCI Allenwood.  As noted above, even if Briston is exposed to

the COVID-19 virus, he may be less likely to be infected or suffer serious symptoms due to his

vaccination.  In sum, it would be speculative at this point for the court to conclude there is an

actual risk that Briston, after his vaccination, will be infected by the COVID-19 virus at FCI

Allenwood.


### c.   Conclusion about COVID-19

Because Briston received the two doses of the Moderna vaccine, and a booster, the court

cannot find that he met his burden to establish that he is at "*uniquely* high risk" of being infected

with the COVID-19 virus or experiencing serious illness if he is infected with the COVID-19

virus.  To conclude otherwise would be speculative, based upon the record before this court.  In

sum, Briston did not show an extraordinary and compelling reason for his compassionate release.

Under these circumstances, there is no need to address the § 3553(a) factors.  The court

appreciates that Briston regrets his actions, has been misconduct free, has completed multiple

rehabilitative programs and has become a better person during the 20 years he has been

incarcerated.  *See* Letter (ECF No. 178-1).  The court encourages him to continue his efforts.

**V. Conclusion**

Once a court imposes a sentence and it becomes final, it may not be modified unless an exception to the rule of finality applies in the case. Here, Briston did not satisfy his burden under § 3582(c)(1)(A) to show that an extraordinary and compelling reason warrants his compassionate release from imprisonment.  His motion for compassionate release (ECF No. 178) will, therefore, be denied.  The denial is without prejudice in the event Briston's circumstances or the conditions at his place of confinement change.

An appropriate order will be entered.

Dated:      October 5, 2022.

BY THE COURT:


s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge